[No. 9608–4–III.   Division Three.   March 22, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. WARD CHARLES BOGART, *Appellant.*

---

*Daniel Arnold,* for appellant (appointed counsel for appeal).

*Andrew K. Miller, Prosecuting Attorney,* and *Kathleen L. Bollman, Deputy,* for respondent.

MUNSON, C.J.—Ward Bogart appeals his conviction for first degree robbery, contending the court erred in failing to accept his offer to plead guilty to robbery in the second degree. We affirm.

On May 25, 1988, Griggs Furniture Store was robbed by two individuals. Ward Bogart and his cousin, Scott Bogart, were arrested after an informant notified the police of a statement made by Scott implicating Ward and himself.

Ward was appointed counsel, who negotiated with the prosecutor's office regarding a plea agreement. A proposal was made in which Ward would plead guilty to second degree robbery in exchange for a recommendation from the prosecutor for 6 months' incarceration.

On June 18, 1988, Ward's attorney, after conferring with the deputy prosecuting attorney handling Ward's case, left town for a previously confirmed vacation. On June 21, an

information was filed charging Ward and Scott with second degree robbery. The deputy prosecuting attorney sent a letter to Ward's counsel indicating the charge and the following: "If your client enters a plea no later than pretrial, I will recommend the middle of the range, restitution, usual costs and fees. If he does not enter a plea, I will amend the Information to Robbery I."

On June 24, 1988, both Scott and Ward were arraigned.[1] At the arraignment Scott Bogart, whose attorney was present, entered a plea of guilty to second degree robbery. In explaining the crime, he made statements further implicating Ward, which the prosecutor determined would be admissible at trial.[2] Immediately thereafter Ward was arraigned. Although his appointed attorney was not present, a substitute public defender stood in. Ward entered a plea of not guilty to second degree robbery.[3]

Based on the statement of Scott during his guilty plea and additional information from Ward's sister indicating she had dropped him off at the store prior to the robbery, the State amended the information on Friday, July 8, 1988,

---

[1] Counsel advises arraignments are every Friday in this judicial district.

[2] "THE COURT: Are you planning on testifying against your cousin?
"[Scott Bogart]: I didn't anticipate. I was under the assumption that we were both to plead guilty.
"THE COURT: Oh. Is he going to plead this morning, the cousin?
"[Deputy Prosecuting Attorney]: I have no information on that, Your Honor. I understand he's represented by Mr. Arnold, who is on vacation. So, I doubt that a plea will be entered today."

[3] "THE COURT: Ward Bogart.
"[Deputy Prosecuting Attorney]: Your Honor, this is the companion case to the one the Court just heard. Mr. Arnold was appointed in District Court, and I believe . . . Mr. Bloor is standing in.
"THE COURT: Why is this robbery in the second degree; didn't know if the gun was real or what?
"[Deputy Prosecuting Attorney]: We can't find the gun, Your Honor.
"Mr. Bloor: Your Honor, we are prepared to go through arraignment today. He would enter a plea of not guilty at this time.
"THE COURT: Is that your plea, Mr. Bogart?
"The Defendant: Yes."

to first degree robbery. That same day during his arraignment on the new charge, Ward, on advice of counsel, who had returned from his vacation, tendered a plea of guilty to the original charge of second degree robbery. The court rejected that guilty plea and entered a plea of not guilty for Ward to the amended charge. On July 29, a bench trial was held on stipulated facts. Ward was found guilty of first degree robbery and sentenced to 31 months, the low end of the standard range. This appeal followed.

■■ The sole issue is whether the court erred in failing to accept Ward's plea of guilty to second degree robbery. A criminal defendant has no constitutional right to a plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 51 L. Ed. 2d 30, 97 S. Ct. 837 (1977); *State v. Robtoy*, 98 Wn.2d 30, 45, 653 P.2d 284 (1982); *State v. Wheeler*, 95 Wn.2d 799, 804, 631 P.2d 376 (1981). The State can revoke a plea proposal offered to a criminal defendant until such time as the defendant enters a plea or has made some act in detrimental reliance upon the offer. *Wheeler*, at 803; *State v. Marler*, 32 Wn. App. 503, 507, 648 P.2d 903, *review denied*, 98 Wn.2d 1007 (1982). *Wheeler* concluded at page 805:

> [A]bsent a guilty plea or some other detrimental reliance by the defendant, the prosecutor may revoke any plea *proposal*. Since the defendant has alleged only "psychological" reliance on the prosecutor's offer, and without a showing that the prosecutor has abused its discretion by *routinely* rescinding its offers, the trial court correctly declined to enforce it.

(Some italics ours.)

The trial court in such a situation must resolve the factual issues of (1) how far the State's offer extended and (2) what the parties' reasonable expectations were. *Marler*, at 507 (citing *United States v. Mooney*, 654 F.2d 482 (7th Cir. 1981); *United States v. Arnett*, 628 F.2d 1162 (9th Cir. 1979)). Once it is established that a plea bargain has been confirmed by the defendant entering a guilty plea, the State is obligated to fully comply with the terms of the agreement. *State v. Hall*, 104 Wn.2d 486, 490, 706 P.2d 1074 (1985) (citing *Santobello v. New York*, 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971)). The remedy for

such a breach may include specific performance of the agreement. *See In re Palodichuk,* 22 Wn. App. 107, 111, 589 P.2d 269 (1978).

The distinction between a plea proposal and a plea agreement or bargain is that the agreement takes effect upon some action of the defendant, *e.g.,* pleading guilty to a lesser charge. The detrimental reliance factor typically arises subsequent to the guilty plea, where pursuant to the agreement the defendant renounces his right to a jury trial in exchange for whatever bargain has been struck.[4] *Wheeler,* at 803, leaves open the possibility that detrimental reliance other than the act of entering a guilty plea is possible, but notes enforcing bargains prior to the plea would inhibit the prosecutor's use of plea bargaining; at this stage, the defendant has waived no rights and still enjoys an adequate remedy—to proceed with a jury trial. *See Government of V.I. v. Scotland,* 614 F.2d 360, 365 (3d Cir. 1980). Accordingly, the defendant has the burden of establishing detrimental reliance; if he attempts to do so when he has not yet entered a guilty plea, he must establish he relied on the bargain in such a way that a fair trial is no longer possible. *Scotland,* at 365.

Here, the issue of detrimental reliance arises in the pre–guilty plea setting. Ward contends he would have pleaded guilty to second degree robbery if his appointed attorney had been present when he was first arraigned with his cousin, Scott. He initially indicates his *attorney* relied on the personal promise from the deputy prosecuting attorney before going on vacation. The detrimental reliance is implied from the difference in the sentencing range between first and second degree robbery.

Given *Wheeler,* we are constrained to find these contentions are unpersuasive. There are no facts to support prosecutorial bad faith, nor of prosecutorial abuse of discretion

---

[4]*See, e.g., United States v. Mooney, supra; United States v. Arnett, supra; United States v. Bowler,* 585 F.2d 851 (7th Cir. 1978); *United States v. Crusco,* 536 F.2d 21 (3d Cir. 1976).

through a repetitive practice of rescinding offers. *Wheeler,* at 805. Nor has there been a showing that Ward was unable to get a fair trial as a result of the prosecutor's action. As *United States v. Crusco,* 536 F.2d 21, 24 (3d Cir. 1976) noted, "cases of disappointed but unfounded expectations must be carefully distinguished from those in which the defendant's expectations . . . are predicated upon promises" by the prosecution. Whether the court would have accepted Ward's guilty plea at his June 24 arraignment, in light of its comments in footnote 3, is speculative. The court could have declined to approve the plea bargain. RCW 9.94A.090(1).

Here, the prosecutor's offer required only one act from Ward—that he plead guilty to second degree robbery. At arraignment awaiting the return of his attorney, he pleaded *not* guilty. It is possible the public defender, who was present, had not discussed the case with Ward and the plea of not guilty was entered because of the necessity for some plea. Even if he had entered no plea, the court may have entered a not guilty plea in his behalf.

Ward asserts *Wheeler* is distinguishable. He would read more into the "confirmation" letter from the prosecution than did the trial court, *i.e.,* make it the equivalent of an option contract. Plea agreements take the form of a unilateral contract. *Wheeler,* at 803. As noted in *Mabry v. Johnson,* 467 U.S. 504, 511, 81 L. Ed. 2d 437, 104 S. Ct. 2543 (1984), which affirmed the holding of *Government of V.I. v. Scotland, supra,* relied on in *Wheeler*: "The Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty."

The conviction is affirmed.

SHIELDS and THOMPSON, JJ., concur.